IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARON P.

v.          NO. 23-CV-2246

MARTIN O'MALLEY,
Commissioner of Social Security

**O P I N I O N**

SCOTT W. REID        DATE: November 7, 2024
UNITED STATES MAGISTRATE JUDGE

       Sharon P. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be denied and judgment granted in favor of the Agency.

I.     *Factual and Procedural Background*

       Sharon P. was born on October 25, 1965. Record at 207. She completed high school and some college coursework. Record at 313, 486. She worked in the past as a custodian, a supply technician, and as a bank teller. Record at 313. On July 14, 2020, Sharon P. filed an application for DIB, alleging disability since August 10, 2019, as a result of multiple sclerosis, face and jaw pain, "nerve pain down left side of body," high blood pressure, headaches, and carpal tunnel syndrome ("CTS") in her left wrist. Record at 207, 311. Other impairments were raised later in the proceedings, such as cervical disc degeneration, depression, and anxiety. Record at 47.

Sharon P.'s application for benefits was denied initially, on November 10, 2020, and upon reconsideration, on August 30, 2021.  Record at 65, 82.  She then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 126.

A hearing took place in this matter on March 16, 2022.  Record at 41.  On March 29, 2022, however, the ALJ issued a written decision denying benefits.  Record at 11.  The Appeals Council denied Sharon P.'s request for review on April 13, 2023, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security.  Record at 1.  Sharon P. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration

> requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.  *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ found that Sharon P. had the severe impairments of degenerative disc disease in the cervical spine, cervical radiculopathy, and peroneal tendinitis. Record at 13. He decided that multiple sclerosis was never a confirmed diagnosis, and – also noting that Sharon P. had never taken medication for multiple sclerosis – found that it was not a medically determinable impairment.[1]  Record at 19. He found that Sharon P.'s hypertension, headaches,

---

[1] A brain MRI conducted on April 5, 2004, because of dizziness Sharon P. was experiencing revealed two "tiny non-specific white matter lesions" for which the differential diagnoses were "small vessel ischemic disease, vasculitis, migraine, Lyme disease and MS." Record at 398.

3

and carpal tunnel syndrome never caused significant limitations in her ability to work, and were therefore non-severe.  Record at 14.  Any mental limitations were mild.  Record at 16-18.

The ALJ did not find that any of Sharon P.'s impairments, or the combination of impairments, met or medically equaled a listed impairment.  Record at 19-20.  He found that she retained the RFC to engage in a limited range of work at the medium exertional level, but could climb ladders, ropes and scaffolds only occasionally; reach overhead and in all directions with her non-dominant left arm frequently (as opposed to constantly); and handle and finger with the left hand frequently.  Record at 21.  She was also limited to simple tasks in a routine work environment, and to no more than frequent interaction with supervisors, co-workers, and the general public.  *Id*.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Sharon P. could not return to any of her prior work.  Record at 32.  She could, however, work in such jobs as custodian, sweeper/cleaner; laundry laborer; or box maker.  Record at 33.  He decided, therefore, that she was not disabled.  Record at 33-34.

In her Request for Review, Sharon P. argues that the ALJ erred in failing to credit the findings made by consulting examiner Brendan McGuire, N.P., that would have limited her to work at the light exertional level.  According to Sharon P., this would have resulted in a determination of disability once Sharon P. turned 55, under Grid Rule 202.04.  She also argues that the ALJ wrongly failed to include all the limitations imposed by Nurse Practitioner McGuire in the hypothetical questions he posed to the vocational expert.

4

IV.    *Discussion*

    A.  *Brendan McGuire, N.P.*

On August 16, 2021, Sharon P. met with Brendan McGuire, N.P., for a consultative examination.  Record at 551.  He diagnosed her with a "history of" multiple sclerosis, facial pain, nerve damage on the left side, dry eye disease, carpal tunnel syndrome on the left, hypertension, cervical injuries, headache, lower back issues, depression, anxiety, and post-traumatic stress disorder.  Record at 556.

Upon physical examination, Sharon P. had a normal gait and station.  Record at 554.  She could heel and toe-walk, and needed no assistance to get or off the examination table.  *Id*.  Her strength was normal in the right arm, 4/5 in the left arm, 4/5 in hands and feet, and 5/5 in the legs.  Record at 555.  Straight leg raising was negative both sitting and supine, although pain was elicited on examination of knees.  *Id*.  Her hand and finger dexterity were intact.  *Id*.  Her range of motion was within normal limits in most aspects, but her lower back was limited to 45 degrees out of a possible 90, and her grip strength was 80% in both hands.  Record at 564, 566.  N.P.

N.P. McGuire indicated that Sharon P. could lift and carry up to ten pounds, and could never lift and carry more weight than that.  Record at 557.  He attributed this to a decreased range of motion in her lumbar spine, and decreased grip strength.  *Id*.  He checked off that she could sit for eight hours in an eight-hour workday, but could stand and walk for only four hours each, in half-hour increments.  Record at 558.  She was limited in handling, pushing, and pulling, due to her decreased grip strength.  Record at 559.  McGuire indicated that Sharon P.'s vision was impaired, but that she was capable of avoiding ordinary hazards in the workplace, using a computer screen, and sorting and distinguishing small objects.  Record at 560.

The ALJ found N.P. McGuire's assessments not to be persuasive. Record at 29. He wrote:

> This opinion is somewhat supported by Mr. McGuire's consultative examination of the claimant. This opinion is not consistent with the other evidence of record discussed above, as it overestimates lift/carry restrictions as well as postural, manipulative, visual, and environmental limitations. For example, the claimant's vision on physical examination by consultative examiner Mr. Bixby on September 17, 2020, was 20/20 with the right eye, 20/25 with the left eye, and 20/20 with both eyes on a Snellen chart at 20 feet without glasses. The claimant reported having mild decreased vision to eye care physician Dr. Mannarino on April 14, 2021. Distant vision was OK. Visual acuity was 20/20-1 with the right eye and 20/40+1 with the left eye on a Snellen chart.

Record at 28-9 (Internal citations omitted).

As Sharon P. notes, the ALJ's discussion of N.P. McGuire's evidence is in some ways unsatisfactory. Specifically, the ALJ's extended discussion of N.P. Bixby's assessment of Sharon P.'s vision ignores the postural, manipulative, and environmental limitations imposed by N.P. McGuire. Nevertheless, remand to correct an ALJ's error is not necessary where it would not change the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

In this case, the ALJ specifically referenced "other evidence of record discussed above" which was inconsistent with N.P. McGuire's findings. Crucially, the evidence to which the ALJ referred can be easily identified, permitting this reviewer to "trace the path" of the ALJ's reasoning. 82 Fed. Reg. 5844-01 at 5858 (Jan. 18, 2017).

First, on October 27, 2020, Sharon P. was examined by her general practitioner, John Pickard, D.O. Record at 597. She told him she had not seen a doctor in a year and was taking no medicines. *Id*. A thorough physical examination revealed no musculoskeletal abnormalities, and 5/5 strength in all major muscle groups. Record at 600-601. Neurologically, Sharon P. was normal, with intact sensory testing, symmetrical reflexes in all extremities, and a normal gait. *Id*. Dr. Pickard reported the same examination findings on December 28, 2021. Record at 580.

Further, consulting nurse practitioner Mark Bixby examined Sharon P. on September 17, 2020. Record at 500. He diagnosed her with cervical disc disease with radiculopathy, carpal tunnel syndrome, and poorly controlled hypertension. Record at 503. However, she had a normal gait and station, and was able to squat fully, and heel and toe-walk, although with a slight balance problem. Record at 502. N.P. Bixby found Sharon P. to have no musculoskeletal abnormality, with negative straight lifting test bilaterally, indicating an absence of radiculopathy. Record at 503. She had no muscle atrophy. *Id*. She had no neurological abnormality or sensory deficit. *Id*. Her hand and finger dexterity was intact. *Id*.

According to N.P. Bixby, Sharon P.'s range of motion was limited in some respects. Record at 511-512. Nevertheless, she could lift ten pounds continuously, 20 pounds frequently, and 50 pounds occasionally. Record at 505. She could sit for four hours in an eight-hour workday, stand for eight hours, and walk for four hours. Record at 506. She was somewhat limited by shoulder pain in reaching with her left arm, but unlimited in other uses of the arm, and unlimited in the use of her right arm. Record at 507. She could frequently balance, stoop, kneel, crouch, and crawl, although she could climb stairs and ladders only occasionally. Record at 508. the ALJ called N.P. Bixby's findings "generally persuasive." Record at 27-8.

The ALJ also accepted in large part the findings of Carl William Rittner, D.O., an agency physician who reviewed Sharon P.'s medical records on November 10, 2020. Record at 20. Dr. Rittner found that Sharon P. could lift 50 pounds occasionally, and 25 pounds frequently. Record at 76. She could stand and/or walk for six hours in an eight-hour workday, and sit for six hours. Record at 77.

The ALJ similarly found "generally persuasive" the opinion of Mindy Uy-Barreta Bermudez, M.D., who examined Sharon P.'s medical records on reconsideration. Record at 29.

7

Like Dr. Rittner, Dr. Uy-Barreta found Sharon P. capable of lifting 50 pounds occasionally and 25 pounds frequently, and of sitting and walking/standing for six hours in an eight-hour workday. Record at 98.

Finally, the ALJ noted that, even on August 15, 2019, five days after Sharon P.'s alleged disabled date, Physician's Assistant Jennifer Pinto found her to have moderate spasm in the cervical and upper thoracic musculature, but full strength and intact sensation in all limbs. Record at 27, 468. She had a negative Lhermitte's sign and Spurling maneuver, indicating an absence of nerve compression in the cervical spine. *Id*.

Thus, most medical specialists who examined Sharon P. found that she was essentially physically normal, with full strength and no sign of a neurological issue. The evidence does not support Sharon P.'s claim of paralysis, but merely stiffness and soreness in her left shoulder, which the ALJ addressed in her RFC assessment by limiting the use of her left upper extremity. Consulting N.P. Mark Bixby, and examining medical experts Drs. Rittner and Uy-Barreta all opined that Sharon P. was able to perform work at the medium exertional level. The ALJ was entitled to rely on their opinions.

It is clear, therefore, that substantial evidence supported the ALJ's refusal to accept the limitations imposed by N.P. McGuire. As the Commissioner points out, this is all that is required here. The Court of Appeals for the Third Circuit has explained that, even if there is evidence in the record that would justify an opposite conclusion, the ALJ's decision will be upheld if it is also supported by evidence. *Parsons v. Barnhart*, 101 Fed. App'x 868, 869 (3d Cir. 2004) (non-precedential), *citing Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

B.   *Grid Rule 202.04*

Sharon P. argues that she is not capable of more than light work, if that, and that she accordingly should be found disabled as of her 55th birthday, under the Medical Vocational Guidelines ("the Grids"), at 20 C.F.R. Part 404, Subpart P, Appendix 2, §202.04.  The Commissioner denies that the Grids compel a finding of disability even if Sharon P. were limited to light work, because Rule 202.04 pertains to petitioners with a history of only unskilled work, while she had a history of employment in skilled and semi-skilled work.  *Response* at 11.

Because, as above, I find that substantial evidence supported the ALJ's finding that Sharon P. could engage in work at the medium-exertional level, it is irrelevant whether the Grids would compel a finding of disability if she were limited to light work.  This claim cannot, therefore, provide a basis for relief.

C.   *The Hypothetical Questions*

Finally, Sharon P. argues that the vocational expert's responses to hypothetical questions posed to her by the ALJ did not constitute substantial evidence upon which the ALJ could rely, because the questions did not include the limitations assessed by N.P. McGuire.  *Rutherford v. Barnhart*, 300 F.3d 546, 554 (3d Cir. 2005) (a hypothetical question posed to a vocational expert must reflect all of a claimant's credibly established impairments).

Here, however, the ALJ did not find the limitations found by N.P. McGuire to be credibly established.  As discussed above, his decision in this regard was supported by substantial evidence.  For this reason, the ALJ was not required to include those limitations in his hypothetical questions to the vocational expert.

9

V.   *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE